# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 21-00035-01-CR-W-BP |
| | ) | |
| YACUB E. WILLIAMS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AND OPINION (1) ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND (2) DENYING DEFENDANT'S MOTION TO SUPPRESS

Defendant has been charged with one count of being a felon in possession of a firearm. He filed a Motion to Suppress, (Doc. 17), contending that the firearm should be suppressed. The Honorable W. Brian Gaddy, United States Magistrate Judge for this District, held a hearing on November 17, 2021, and thereafter issued a Report recommending that the Motion to Suppress be denied. (Doc. 31.) Both parties object to Judge Gaddy's Report and Recommendation ("the Report").

The Court has conducted a de novo review as required by 28 U.S.C. § 636(b)(1). In particular, the Court has reviewed the parties' submissions before the hearing, the transcript and exhibits from the hearing, and the parties' objections. Having conducted this review, the Court adopts the Report as the Order of the Court insofar as it addresses the issues of abandonment and consent and denies the Motion to Suppress. The Court's discussion is intended to augment, not supplant, the Report's recommended findings and conclusions.

## I. BACKGROUND

While the Court adopts the Report's recommended factual findings *in toto*, a brief summary is necessary for purposes of the present discussion. On December 6, 2019, the undersigned issued

an order for issuance of an arrest warrant based on allegations that Defendant violated the terms of his supervised release.[1] Officer Chance Cooper of the Jackson County Sheriff's Office (and a member of the U.S. Marshal's Midwest Fugitive Task Force) organized an effort to apprehend Defendant at his residence. On the morning of December 27, 2019, Officer Cooper observed someone he believed might be Defendant leave the residence, driving a Ford Fusion. The Fusion returned and backed into the driveway, and Defendant then exited the driver's side of the vehicle. Officers approached and announced themselves; Defendant ran and the officers pursued, but they were unable to apprehend him.

At some point, Deputy Marshal Michael Stokes – who also was involved in the effort to apprehend Defendant – ascertained that no officer had remained with the Fusion. He returned and found Cortney Jones in the driver's seat. Jones also lived in the residence and was the Fusion's registered owner. She had been in the passenger seat, but the passenger door could not be opened so to exit she had over into the driver's seat. Jones's six-year-old daughter was in the back seat.

Jones was unable to roll down the window (because Defendant had the Fusion's keys) so she opened the door in order to talk to Deputy Stokes. He noticed a towel covering something between the console and the driver's seat. It would later be determined that the towel covered a Kel-Tec, Model SU-16, 5.56 mm caliber rifle (with the stock pointing upward at an angle but not above the seat or console, and the muzzle on the floorboard), but Deputy Stokes testified that "[i]t was covered by the towel so you couldn't actually see it." (Doc. 30, p. 68.) He asked Jones for permission to search the car, which she granted. Deputy Stokes testified that as Jones exited the door, he could see what he suspected was the shape of a rifle's stock under the towel. (Doc. 30,

---

[1] Details about Defendant's prior convictions leading to him being on supervised release are set forth in footnote 2 of the Report.

p. 69.) He removed the towel, revealing the rifle's stock sticking up between the seat and the console. He did not search the car further.

When the other officers returned after not being able to find Defendant, Deputy Stokes told Officer Cooper about the rifle. Officer Cooper asked Jones if she would give permission for the car to be searched, and she again consented. He looked in the car and also saw the rifle's stock between the console and driver's seat.

The conversation with Jones eventually moved inside her residence. Jones was asked if she would allow the officers to search the premises to see if Defendant was there, and she agreed. Jones was allowed to enter the residence after it had been searched. At that point, Jones was asked to sign consent forms giving the officers permission to search the Fusion and the residence. During this conversation Officer Cooper advised Jones that harboring or assisting a fugitive is a violation of law; giving such advice is standard practice. (Doc. 30, pp. 30-31.) Jones executed both consent forms.

During the encounter(s) described above, Jones was cordial and cooperative. She was never handcuffed, told that she was under arrest, or told that she was not free to leave. There is no evidence that Officer Cooper, Deputy Stokes, or any other law enforcement officer had their weapons drawn during their conversations with Jones.

Additional facts will be discussed as necessary in Part II of this Order.

## II.  DISCUSSION

### A.  Defendant's Objections

The Report recommends that the Court conclude that Defendant (1) abandoned the Fusion and the rifle and thus lacks standing to challenge either the search of the car or the seizure of the

weapon, (Doc. 31, pp. 11-12), and (2) even if Defendant did not abandon the car and the rifle, Jones consented to the search. Defendant objects to these aspects of the Report.

The Court accepts that, as an authorized user of the Fusion, Defendant had an expectation of privacy in the car's contents. However, "[t]he Fourth Amendment is not implicated by a search of property that has been abandoned because a defendant who has abandoned his property has relinquished his reasonable expectation of privacy." *United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016) (cleaned up). Defendant argues that "Jones had implied consent to take control of any property and interest in the [Fusion] because of the nature of their relationship," (Doc. 33, p. 2), but cites no fact or authority for this proposition – although, because the Fusion belonged to Jones, it was natural for Defendant (or anyone) to assume that Jones would take control of it. Regardless, the Court is not convinced this fact matters. "Whether property has been abandoned is determined on the basis of the objective facts available to the investigating officers, not on the basis of the owner's subjective intent." *Nowak*, 825 F.3d at 948. Here, the officers saw Defendant run away from the Fusion (and them), leaving it in the possession of its owner, Jones. Defendant's expectation that Jones would "take control of" the Fusion arises from the fact that it was her car and seems consistent with a conclusion that he was abandoning the Fusion.

In any event, even if Defendant did not abandon the Fusion, Jones consented to the search. In fact, she did so three times. She consented while she was in the car talking to Deputy Stokes, she consented when she talked to Officer Cooper outside the car, and she executed her written consent after returning to her residence. And the initial consent, alone, was sufficient to allow Deputy Stokes to constitutionally move the towel to reveal the rifle's presence.[2]

---

[2] In his initial Motion Defendant argued that if Jones consented, her consent should be disregarded because the officers intentionally bypassed Defendant to obtain consent from Jones. Defendant does not raise this issue in his Objection to Judge Gaddy's Report, and the Court rejects the argument in any event. "An officer cannot rely on a third party's consent to intentionally bypass a person who is present, has a superior privacy interest in the premises, and actively

4

Case 4:21-cr-00035-BP   Document 36   Filed 03/21/22   Page 4 of 7

Defendant argues that Jones's initial consent was involuntary because Deputy Stokes began searching before garnering her consent, but the Court does not find that Deputy Stokes began searching the car before Jones gave him permission to search the car. Defendant also points out that law enforcement vehicles had surrounded the Fusion, but this fact did not render Jones's consent involuntary. The Court must consider the totality of the circumstances, including a list of factors set forth in the Report, (Doc. 31, p. 13), and which will not be repeated in this Order. Here, the Fusion was surrounded by law enforcement vehicles, but Jones was not arrested or detained, threatened, or prevented from exiting the car. Significantly, she knew the officers were not looking for her and did not suspect her of a crime; she knew that they were looking for Defendant. Beyond the Fusion being blocked, Jones's movement was not restricted. Finally, the conversation between Jones and Deputy Stokes was cordial and polite, which is another factor suggesting that the atmosphere was not coercive. *E.g., United States v. Gastelum*, 11 F.4th 898, 904 (8th Cir. 2021). For these reasons, the Court concludes that Jones voluntarily consented to Deputy Stokes's search of the car, which led to him moving the towel and revealing the rifle.

The Court further finds that the two subsequent consents were consensual as well, largely for the same reasons expressed above. Defendant observes that at some point Jones was not permitted to go into her residence because of a concern that Defendant might have returned while the officers were looking for him, but this fact is not sufficient to outweigh the other facts. Defendant also argues that the consent forms were blank when Jones signed them, but the Court finds that this was not the case.

---

objects to the search." *United States v. Munoz*, 590 F.3d 916, 922 (8th Cir. 2010) (cleaned up). Defendant fled so he was not present and he did not object. Moreover, his privacy interest was not superior to Jones's. "An owner of a vehicle may consent to its search even if another person is driving the vehicle." *United States v. Guzman*, 507 F.3d 681, 687 (8th Cir. 2007)

For these reasons, the Court concludes that Defendant abandoned any privacy interest he had in the Fusion – and even if he did not, Jones (who had a superior ownership/privacy interest in the Fusion) voluntarily consented to the search. For these reasons the Motion to Suppress is denied.

### B. The Government's Objections

The Report recommends that the Court conclude that the "plain view exception" and the "automobile exception" did not justify moving the towel that covered the rifle or otherwise searching the car. The Government objects to these aspects of the Report. The Court sees no reason for a detailed analysis; having determined that the Motion to Suppress should be denied, there is little reason for a lengthy discussion of other reasons why it might also be denied (although the Court recognizes that the Government may have lodged its objection out of an abundance of caution lest its arguments be deemed to have been waived). Moreover, it is not clear from the Record what exactly Deputy Stokes saw or considered, making it difficult to ascertain whether or how these doctrines would apply.

The state of the Record is understandable; at the hearing the parties focused on the issue of Jones's consent. And the Court is not stating that these doctrines do not apply; all the Court is holding is that the Record is insufficient to permit a determination either way. Should these issues become determinative the Court would recommit the matter to Judge Gaddy for further development of the Record. *See* 28 U.S.C. § 636(b)(1)(C). However, these issues need not be resolved in order to rule on the Motion to Suppress, so the Court sees no need to recommit the matter to Judge Gaddy.

## III. CONCLUSION

The Court adopts the Report and Recommendation, (Doc. 31), to the extent it addresses the issues of abandonment and consent, augmented by the discussion above. Defendant's Motion to Suppress, (Doc. 17), is **DENIED**.

**IT IS SO ORDERED.**

DATE: March 21, 2022

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
UNITED STATES DISTRICT COURT